(December 1, 1924.)

## ZOYARA N. SMITH-NIELAND, Appellant, v. ELIAS M. REED and ELIZABETH REED, Respondents.

[231 Pac. 102.]

ATTORNEY AND CLIENT—WITHDRAWAL OF ATTORNEY—DUTY OF ADVERSE PARTY—PERSONAL KNOWLEDGE—MOTION TO VACATE JUDGMENT—DISCRETION OF COURT.

1. C. S., sec. 6577, providing that when one party's attorney dies, is removed, suspended or ceases to act as such, the adverse party must, before any further proceedings can be had, by written notice require such party to appoint another attorney or to appear in person, has no application where the adverse party has personal knowledge of the withdrawal of her attorney and of the setting of the case for trial.

2. Record examined and *held* that the court did not abuse its discretion in denying motion to vacate judgments.

APPEAL from the District Court of the Ninth Judicial District, for Bonneville County. Hon. George W. Edgington, Judge.

Motion to set aside judgments. Motion denied. *Affirmed.*

A. H. Wilkie, for Appellant.

After the withdrawal of an attorney, the adverse party cannot, without complying with C. S., sec. 6577, obtain a valid judgment in the case. (*McMunn v. Lehrke,* 29 Cal. App. 298, 155 Pac. 473; *Bogue Supply Co. v. Davis,* 36 Ida. 249, 210 Pac. 577.)

W. H. Holden and E. M. Holden, for Respondents, cite no authorities on points decided.

BUDGE, J.—This action arises out of a contract entered into between appellant and respondents in 1919 for the purchase of certain lands in Bonneville county. Appellant claims that she was entitled, under the contract, to the crops growing upon the land during that year, alleged that

she had been deprived by respondents of a portion of such crops and sought by this action to recover the value thereof. Respondents' answer in effect constituted a denial. They also filed a cross-complaint praying for a cancelation of the contract and asked that title to the premises be quieted in them. By stipulation of the parties all the material allegations of the cross-complaint were deemed denied.

On April 24, 1922, C. E. Crowley announced in open court his withdrawal as attorney for appellant, of which proper entry was made in the minutes by the clerk, for the reason that appellant had requested such withdrawal and informed Mr. Crowley that she had employed other counsel in the case. On April 26, 1922, counsel for respondents notified appellant by letter, addressed to her at Ashton, that her case against respondents had been set down for trial on April 28, 1922, at 2 o'clock P. M. They also notified appellant by the same letter that C. E. Crowley had withdrawn as her attorney in this case. It appears from appellant's affidavit that owing to her absence from Ashton she did not receive this letter until about 1:00 P. M. on April 28, 1922. On that day the cause came on for trial at Idaho Falls and respondents appeared by E. M. Holden as counsel, but no appearance was made on behalf of the appellant other than as shown by the record that A. H. Wilkie, Esq., appeared "specially for the plaintiff for the purpose of objecting to the case proceeding to trial," for the reason that her attorney, C. E. Crowley, withdrew from the case on April 24, 1922, and no notice had been served upon her to appoint another attorney or to appear in person as provided by C. S., sec. 6577. This objection was overruled and the motion of respondents "that the complaint filed herein and the main controversy herein be dismissed for want of prosecution" was granted. Judgment was thereupon entered accordingly. Upon the issues raised by the cross-complaint proof was submitted and judgment awarded in favor of respondents.

Appellant thereafter moved to set aside the judgment of dismissal in the main action and the judgment on the cross-complaint on the following grounds:

"1. That her attorney of record, C. E. Crowley, withdrew from the case and had ceased to act as plaintiff's attorney, on April 24, 1922, and that written demand, or any demand or notice whatsoever, had not been made upon plaintiff by the defendants or from any other source to appoint other counsel or appear in person as required by section 6577 of the Idaho Compiled Statutes 1919.

2. That on the 28th day of April, 1922, at the time said cause came on for trial, and the said judgments were made and entered, plaintiff had not received notice, official or otherwise, that the cause was set for trial, except the information conveyed to her by A. H. Wilkie, on April 27, 1922, at about 8:00 o'clock P. M., as set forth in affiant's affidavits, and at that time had not retained counsel to represent her in said cause."

This motion was denied and appeal is taken from the order denying the motion. The court's ruling upon the motion is the only ground specified and relied upon for a reversal. C. S., sec. 6574, provides that:

"The attorney in an action or special proceeding may be changed at any time before judgment or final determination as follows:

"1. Upon his own consent, filed with the clerk, or entered upon the minutes. . . . . "

From the record in this case it appears that C. E. Crowley, Esq., withdrew from the case on April 24, 1922, at the request of appellant and that his withdrawal was entered in the minutes as of that date.

C. S., sec. 6575, provides that:

"When an attorney is changed, as provided in the last section, written notice of the change and of the substitution of a new attorney, or of the appearance of the party in person, must be given to the adverse party; until then, he must recognize the former attorney."

No such written notice was given in this case. In the absence of the giving of such notice, respondents owed no duty to appellant to inform her of the withdrawal of her attorney. It was appellant's duty to give respondents' coun-

sel notice of the withdrawal of her attorney. However, in order to be fair and to take no undue advantage of the appellant, counsel for respondents sought to comply with the provisions of C. S., sec. 6577, which reads as follows:

"When one party's attorney dies, is removed, suspended or ceases to act as such, the adverse party must, before any further proceedings can be had by written notice, require such party to appoint another attorney or to appear in person."

This notice, while sent to appellant by registered mail, did not reach her, according to her affidavit, until 1 o'clock P. M. on April 28, 1922, and the cause was set for trial at 2 o'clock on that day. This statute, as we construe it, has no application where the adverse party has personal knowledge of the withdrawal of her attorney and of the setting of the case for trial, and therefore respondents were under no duty to give the notice. From appellant's affidavit and also from the affidavit of A. H. Wilkie, her attorney, it appears that on April 27, 1922, she had personal notice of the setting of the cause for trial on the following day and that she met Attorney Wilkie at Ashton on April 27, 1922, and prior thereto and consulted with him with reference to the case. Mr. Wilkie appeared when the case was called for trial at the time theretofore set and sought to have the cause continued for the sole and only reason that Mr. Crowley had withdrawn from the case on April 24, 1922, as appears by Mr. Crowley's affidavit, which affidavit discloses the fact, among other things, that appellant had requested Mr. Crowley to withdraw and had informed him that she had employed other counsel in the case. It further appears that prior to April 24, 1922, appellant went to Mr. Wilkie for the purpose of employing him as her attorney in the case and that he informed her that it would be necessary for her to first settle with Mr. Crowley and arrange with him to withdraw from the case. She did this on or about April 24, 1922, and immediately returned and so informed Mr. Wilkie, who was later employed by her and appeared for the purpose of having the cause continued for the reason above stated.

No sufficient application was made for a continuance and the court did not abuse its discretion in denying the motion.

To our minds it is quite clear that the purpose sought to be attained in the proceedings had was that the cause go over the term, to the end that the possession of the property sought to be had be delayed, thereby giving to appellant the benefit of the crop thereafter to be grown.

The order made by the lower court should be affirmed and it is so ordered. Costs are awarded to respondents.

McCarthy, C. J., and Wm. E. Lee, J., concur.

DUNN, J., Dissenting.—I am unable to concur in the majority opinion for the reason that in my judgment it is in direct conflict with a perfectly plain and unambiguous statute, C. S., sec. 6577.

The opinion says: "This statute (C. S., sec. 6577), as we construe it, has no application where the adverse party has personal knowledge of the withdrawal of her attorney and of the setting of the case for trial and therefore respondents were under no duty to give her notice." It seems somewhat remarkable that if this exception were intended by the legislature it nowhere appears from anything said in the statute. Ordinarily we understand it to be necessary to "construe" statutes only where the language used leaves the meaning not entirely clear. Is there any lack of clearness of meaning when the statute says that a certain notice must be given "When one party's attorney dies, is removed, suspended or ceases to act as such"?

If this exception is read into the statute in what cases will the notice be required? It is hardly possible that if a party's attorney dies, or is removed, or is suspended the party would not know it, and ordinarily no reputable lawyer, having engaged to act as attorney for a party, would "cease to act as such" without so advising his client. There is thus only a remote possibility that anyone would ever be called upon to give the notice required by this statute. In other words, we have a perfectly plain, unambiguous statute, in-

tended to be of universal application, so "construed" as to substantially destroy it. There is a well-settled rule that requires a construction to be adopted which will give effect to a statute as it is plainly written rather than one that will render it meaningless and of no effect.

This court has said in conformity with long-established principles of construction:

"When the language of a statute is unambiguous the clearly expressed intent of the legislature must be given effect, and there is no occasion for construction." (*State v. Jutila,* 34 Ida. 595, 202 Pac. 566.)

"A statute must be construed so as to give force and effect to its terms if possible." (*State v. Jones,* 34 Ida. 83, 199 Pac. 645.)

"A statute written in the plain and ordinary language in common, every-day use, dealing with a subject that is neither technical nor scientific, should be construed as the ordinary reading public would read and understand it." (*Howard v. Grimes Pass P. M. Co.,* 21 Ida. 12, 15, Ann. Cas. 1913C, 284, 120 Pac. 70.)

"When words have no technical meaning, or when they have not been used or employed in a technical sense in the statute, they should be given their ordinary significance as popularly understood." (*State v. Morris,* 28 Ida. 599, Ann. Cas. 1916D, 573, 155 Pac. 296.)

It is not claimed, and cannot be, that there are in this statute any technical or scientific terms used, for they are plainly the language of every-day use. Neither is the subject of the statute in any sense technical. Both the language and the subject are perfectly familiar to the ordinary reading public.

C. S., sec. 9455, provides:

"Words and phrases are construed according to the context and the approved usage of the language, but technical words and phrases, and such others as have acquired a peculiar and appropriate meaning in law, or are defined in the succeeding section, are to be construed according to such peculiar and appropriate meaning or definition."

"When the intention of the legislature is so apparent from the face of a statute that there can be no question as to the meaning, there is no room for construction. It is not allowable to interpret what has no need of interpretation. To attempt to do so would be to exercise legislative functions. There is no safer or better settled canon of interpretation than that when language is clear and unambiguous it must be held to mean what it plainly expresses. These views of eminent courts are supported by numerous cases. When the meaning of a statute is clear, its consequences, if evil, can only be avoided by a change of the law itself, to be effected by the legislature and not by judicial construction. But an interpretation of a statute which must lead to consequences which are mischievous and absurd is inadmissible if the statute is susceptible of another interpretation by which such consequences can be avoided. For this purpose all parts of a statute are to be read and compared. Still, when the words of a provision are plainly expressive of an intent not rendered dubious by the context, no interpretation can be permitted to thwart that intent; the interpretation must declare it, and it must be carried into effect as the sense of the law." (2 Lewis' Sutherland on Statutory Construction, 2d ed., sec. 367.)

"The great fundamental rule in construing statutes is to ascertain and give effect to the intention of the legislature. This intention, however, must be the intention as expressed in the statute, and where the meaning of the language used is plain, it must be given effect by the courts, or they would be assuming legislative authority." (36 Cyc. 1106.)

No reason is given for holding that the language employed by the legislature, which appears to be broad enough to cover every. case that can arise, does not in fact cover that of a party who has personal knowledge of the withdrawal of his attorney and of the setting of his case, though one naturally looks for a reason to be assigned for so radical a holding, especially in view of the fact that the state constitution commits to the legislature, and not to this court,

the duty of providing the method of procedure in all courts below the supreme court.

"The legislature shall . . . . regulate by law, when necessary, the methods of proceeding in the exercises of their powers of all the courts below the supreme court, so far as the same may be done without conflict with this constitution." (Const., art. 5, sec. 13.)

It is true, as suggested in the opinion, that appellant did not give respondents the notice required of her by C. S., sec. 6575, but respondents are not here complaining of her default. They abandoned their right to have such notice, just as they abandoned their right to regard Crowley as appellant's attorney until she had substituted another for him, by having the case set down for trial and by proceeding to give a notice of their own invention to appellant rather than the notice required by C. S., sec. 6577. By standing upon their rights as defined by C. S., sec. 6575, or by giving the notice required by C. S., sec. 6577, respondents would no doubt have been met by appellant's counsel in the trial of the case, but, whatever their motive may have been, fair or unfair, they ignored all these provisions of the statutes and took the shorter method which resulted in a judgment obtained in an *ex parte* hearing. No doubt they reasoned that if they failed to sustain such a judgment they could go back and give the notice required, while they would be on safe ground if it were upheld. It may be well to remark here that in lawsuits usually the measure of fairness required of a party is to accord to an adversary the rights given him by law.

It may be that appellant was seeking to put the trial of the case over the term, but that purpose, if admitted, could not operate to deprive her of her rights under the law.

I think the judgment should be reversed.

I am authorized to state that William A. Lee, J., concurs in this view.