349 P.2d 711

Application of BOISE WATER CORPORATION for Authority to Increase Certain Water Rates.

No. 8755.

Supreme Court of Idaho.

Feb. 23, 1960.

Carey H. Nixon, Boise, for applicant-respondent.

Frank L. Benson, Atty. Gen., and William P. Roden, Asst. Atty. Gen., for Idaho Public Utilities Commission.

Raymond D. Givens, Boise, for appellant Consumers Water Corporation.

McQUADE, Justice.

Boise Water Corporation made application to the Public Utilities Commission for revised rules and regulations, and revised rates. The Consumers Water Corporation protested the Boise Water Corporation's application for revised schedule of rates. The protestant asserted the increase should apply only to the lawn sprinkling rates. Based upon its findings, the Public Utilities Commission granted a modified increase in the schedule of rates to the applicant. This appeal is taken from two orders of the Commission granting the revised schedule of rates.

Protestant does not raise issues as to the necessity for modification of the rates, the amount of the plant investment, nor as to the efficiency of the operation of Boise Water Corporation. Objection is made solely to the lawn sprinkling rate in that it is too low, and adversely affects the protestant, which is a supplier of low-pressure water for lawn irrigation to a portion of Boise residents, who are described as about one-third of the population or less.

Protestant urges that its suggested schedule of rates will permit Boise Water Corporation to retain its present rate for domestic water while increasing only the lawn sprinkling rate. By making this type of revision in the rates, the protestant argues that it will procure some of the Boise Wa-

ter Corporation customers, thereby permitting the protestant profitably to stay in business.

Boise Water Corporation has 17,700 water services to 16,175 customers, and 214 miles of distribution mains. Its source of supply is 15 deep wells having a combined capacity of 20,000,000 gallons per day. It also has a storage system of 8.45 million gallons.

Boise Water Corporation's existing rates at the time of the hearing for domestic use were as follows:

For the first 3,000 cubic feet per month per 100 cubic feet            28¢

For the next 7,000 cubic feet per month per 100 cubic feet            21¢

For the next 10,000 cubic feet per month per 100 cubic feet            14¢

For all over 20,000 cubic feet per month per 100 cubic feet            10¢

Lawn sprinkling rate was 11 cents per 100 cubic feet.

The Utilities Commission modified the requested schedule of revised rates to produce $99,939 instead of the requested amount of $146,428, part of which was to be derived from the lawn sprinkling rate, increased to 12 cents per 100 cubic feet. The modified domestic use rates are not set out herein, because that schedule is not part of the record here on appeal.

The Boise Water Corporation president stated that in accordance with water business experience the rates and charges are just, fair, reasonable, equitable, and not excessive.

On the other hand, the protestant, in seeking to readjust the rate schedule, proposes that one rate be applied to all water supplied, because investment and operational costs are constant as to all of the water supplied, and rates should be in direct ratio thereto. They argue, further, that a very reasonable sprinkling rate results in an unjustifiable discrimination between users.

The Public Utilities Commission, in its order, found:

"The protestant, Consumer's Water Corporation appeared to protest the proposed increase in all rates except for lawn sprinkling. The protestant is not a customer of the applicant, but is in limited competition with the applicant in the furnishing of water for irrigation purposes. The protestant protested the granting of any increase in the water rates filed by the applicant which are presently in effect except for the increase requested for lawn sprinkling. It is the protestants position that under a cost of service approach the general service rates of the applicant now produce adequate earnings but the lawn sprinkling rates do not.

"Protestant arrived at this conclusion by allocating the costs among the various services on the basis of the usage of water for the year 1957. It was the conclusion of the protestant that if the present lawn sprinkling rate *was* eliminated then use of a larger quantity of water at the higher domestic rate would provide sufficient revenues. The protestant did not make any adjustment for the decreased revenue that would result if the rate for lawn sprinkling were more than doubled.

"The reduced use of water with such treatment as this, would in our opinion have a serious effect on the revenues of the applicant and could only result in higher rates for all types of service. We cannot find a basis for changing the type of rate now in effect for the applicant in the showing made by the protestant."

The finding of the Commission in this regard is as follows:

"That there is insufficient evidence before the Commission that the Protestant will be adversely affected by the granting of increased rates as hereinafter ordered."

This Court has stated, in the case of In re Union Pacific R. Co., 65 Idaho 221, 142 P.2d 575, 578:

"The law is that findings and orders of the Public Utilities Commission, if supported by competent evidence, will be binding upon this court, and they will be reversed only when it is shown the Commission has abused its discretion or failed to follow the law. * * Boise Artesian. Water Co. v. Public Utilities Comm., 40 Idaho 690, 236 P. 525; Capital Water Company v. Public Utilities Comm., 44 Idaho 1, 262 P. 863; Nez Perce Roller Mills of Lewiston v. Public Utilities Comm., 54 Idaho 696, 34 P.2d 972; State ex rel. Taylor v. Union Pacific Railroad Co., 60 Idaho 185, 89 P.2d 1005; Union Pacific Railroad Co. v. Public Service Comm., 102 Utah 465, 132 P.2d 128."

As to the case at hand, we would have to find that the Commission abused its discretion in establishing the schedule of rates which it has; however, there is sufficient evidence and precedent upon which to base the order.

The Commission had before it evidence from the president of the protestant concerning his interpretation of the water rate manual of the American Waterworks Association, and an interpolation of Boise Water Corporation data in relation to that manual. There may be merit in protestant's urging that the Commission use different formulae for establishing of rates; however, there is

an insufficiency in this record to make a detailed examination in relation to the attributes of each formula.

■ It is the province of the Commission to establish a rate structure and reasonable rates based thereupon. It was stated in the case of Petition of Mountain States Tel. & Tel. Co., 76 Idaho 474, 284 P.2d 681, 685:

"It was entirely within the province of the commission to determine whether the procedures provided by the manual would result in a reasonable and just rate base and, therefore, whether or not it would follow those procedures. * * *"

■ There were several service rates considered by the Commission in establishing a rate schedule for Boise Water Corporation; in addition to the general metered service and the combination of domestic and lawn sprinkling service, there were optional metered service, lawn sprinkling service, industrial service, Boise City fire service, rural fire service, street sprinkling service, private fire service, and connection service charges.

Although there is some evidence in the record as to why the rate schedule should be modified, this evidence is not of a persuasive character and of such sufficiency as to justify the Commission in arbitrarily abandoning a rate schedule which had been in effect for many years.

■ In Kiefer v. City of Idaho Falls, 49 Idaho 458, 289 P. 81, 83, this Court, in upholding a rate schedule, stated:

"Mere difference in the rates charged various classes of users is not sufficient to establish an unjustifiable discrimination. Live Oak Water Users' Association v. Railroad Commission, 192 Cal. 132, 219 P. 65, at page 69; Silkman v. Board of Water Commissioners, 152 N.Y. 327, 46 N.E. 612, 37 L.R.A. 827; Western Union Tel. Co. v. Call Pub. Co., 44 Neb. 326, 62 N.W. 506, 27 L.R.A. 622, 48 Am.St. Rep. 729; State v. Central Vermont Railroad Co., 81 Vt. 463, 71 A. 194, 130 Am.St.Rep. 1065; Williams v. Maysville Tel. Co., 119 Ky. 33, 82 S.W. 995; Graver v. Edison Electric Illuminating Co., 126 App.Div. 371, 110 N.Y.S. 603; Boerth v. Detroit City Gas Co., 152 Mich. 654, 116 N.W. 628, 18 L.R.A., N.S., 1197; Idaho Power Co. v. Thompson, D.C., 19 F.2d 547; Wyman on Public Service Corporations, § 1320; 22 Cal.Juris. 70."

The Court further stated therein:

"The criterion for determining what are just and reasonable rates has been well stated in a general way as follows: 'Each case must depend very largely

upon its own special facts, and every element and every circumstance which increases or depreciates the value of the property, or of the service rendered, should be given due consideration, and allowed that weight to which it is entitled. It is, after all, very much a question of sound and well-instructed judgment.' Spring Valley Water Co. v. City and County of San Francisco, C.C., 165 F. 667, at page 680, citing cases."

■■■ In discussing variation in rates between users, the California First District Court of Appeal, in Durant v. City of Beverly Hills, 39 Cal.App.2d 133, 102 P.2d 759, 762, said:

"* * * Lack of uniformity in the rate charged is not necessarily unlawful discrimination, and is not prima facie unreasonable. Discrimination to be objectionable must draw an unfair line or strike an unfair balance between those in like circumstances having equal rights and privileges. 'The fundamental theory of rate making for public utilities is that there shall be but one rate for a particular service, and a charge made to one patron or consumer different from that made to another, for the same service under like circumstances, constitutes undue discrimination and renders the charge improper. The fact, however, that a rate is discriminatory by comparison with another rate does not necessarily establish or imply that either of them is unreasonable in the sense of being inadequate or exorbitant. * * * It is only unjust or unreasonable discrimination which renders a rate or charge unreasonable; and a utility may, without being guilty of unlawful discrimination, classify its customers. or patrons upon any reasonable basis, as according to the purpose for which they receive the utility's service or product, or the quantity or amount received, and, subject to the general requirements of reasonableness, make separate rates for each class or group, even though there be but one customer included therein.' 51 C.J. 29, 30."

The Commission finds the facts, which will not be disturbed on appeal when there is competent evidence upon which to make its findings.

"The commissioners, of course, are the fact-finding body of the state to, in the first instance, investigate and determine situations of this kind, and while its findings of fact are binding upon the court, its findings and conclusions must be sustained by competent evidence. * * *" State ex rel. Taylor v. Union Pac. R. Co., 60 Idaho 185, 89 P.2d 1005, 1003.

"* * * if the raises approved in this proceeding before us and the schedule of charges fixed by the Commission are justifiable * * * just and reasonable to the Company and the people served, and permit the Company to maintain adequate, efficient, just and reasonable service * * * are non-discriminatory, and do not establish *unreasonable* differences as to rates, charges and service between localities, or classes of service * * * and if the rates fixed by the Commission are based on competent, substantial evidence to support the findings and conclusions made * * * the same should be by this Court upheld." Application of Pacific Tel. & Tel. Co., 71 Idaho 476, 233 P.2d 1024, 1026.

█ Boise Water Corporation and Consumers Water Corporation render different utility services to the people of Boise and vicinity, the Boise Water Corporation principally furnishing a high-pressure domestic water service and sprinkling water during the sprinkling season, whereas the Consumers Water Corporation provides low-pressure irrigation water for a small portion of Boise residents. Under such circumstances there is no justification in providing a protective rate schedule for the Consumers Water Corporation. McFayden v. Public Utilities Consol. Corp., 50 Idaho 651, 299 P. 671.

██ The Consumers Water Corporation urged that the evidence is sufficient to support a conclusion and order favorable to protestant. The application for rehearing before the Commission also proposes to put on additional evidence to show the actual number of Boise Water Corporation customers using lawn sprinkling service to demonstrate what effect a modification of the lawn sprinkling rate would have upon Boise Water Corporation customers and the amount of revenue derived therefrom. This is all in the realm of speculation, in that the evidence to be introduced is not set forth in sufficient detail to warrant granting of a rehearing. In addition, such items are only a small portion of the consideration necessary to establish a schedule of rates, and could in nowise in and of themselves alone be sufficient to justify this Court in arriving at the conclusion that the rates are unreasonable and discriminatory and prejudicial to the protestant.

The order of the Public Utilities Commission is affirmed.

Costs to respondent.

TAYLOR, C. J., and SMITH and KNUDSON, JJ., concur.

PORTER, C. J., sat at the hearing, but did not participate in the decision.